James E. Cecchi
*JCecchi@carellabyrne.com*
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: 973-994-1700
Facsimile: 973-994-1744

Elizabeth J. Cabraser
*ecabraser@lchb.com*
Eric B. Fastiff
*efastiff@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008

David S. Stellings
*dstellings@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212-355-9500
Facsimile: 212-355-9592

*Attorneys for Plaintiffs*
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE NEWTON, OREN ARBIT, BILTRITE FURNITURE, INC., DENNIS LANE, MARK ROSEN, TYLER CARVER, MILES ROSEN, and FRANK PALUMBO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BAYERISCHE MOTOREN WERKE | Case No. _____ <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1371411.1

AKTIENGESELLSCHAFT, BMW OF
NORTH AMERICA, LLC, DAIMLER
AKTIENGESELLSCHAFT, MERCEDES-
BENZ USA, LLC, VOLKSWAGEN
AKTIENGESELLSCHAFT,
VOLKSWAGEN GROUP OF AMERICA,
INC., AUDI AKTIENGESELLSCHAFT,
AUDI OF AMERICA, LLC, DR. ING.
H.C. F. PORSCHE
AKTIENGESELLSCHAFT, and
PORSCHE CARS NORTH AMERICA,
INC.,

                    Defendants.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

JURISDICTION AND VENUE .............................................................................2

PARTIES ...............................................................................................................4

FACTUAL BACKGROUND ..................................................................................9

    I.      The Circle of Five Met and Conspired for Over 30 Years. ....................9

    II.     The Circle of Five Conspired to Coordinate Clean Diesel Engine Technology. ...............................................................................................11

    III.   The Circle of Five Conspired Instead of Competing, and Covered It Up. ............15

    IV.   VW AG and Daimler AG Raced to European and German Antitrust Authorities Once Their Cartel Was Exposed...........................................17

INJURY ...............................................................................................................17

TOLLING OF THE STATUTE OF LIMITATIONS.............................................19

CLASS ACTION ALLEGATIONS ......................................................................19

CLAIMS FOR RELIEF .......................................................................................24

FIRST CLAIM FOR RELIEF VIOLATIONS OF THE SHERMAN ACT, 15 U.S.C. § 1 .........24

SECOND CLAIM FOR RELIEF VIOLATION OF STATE ANTITRUST LAWS ...................25

THIRD CLAIM FOR RELIEF VIOLATION OF STATE CONSUMER PROTECTION AND UNFAIR COMPETITION LAWS .......................................................42

FOURTH CLAIM FOR RELIEF UNJUST ENRICHMENT .......................................53

PRAYER FOR RELIEF .......................................................................................53

DEMAND FOR JURY TRIAL .............................................................................55

## INTRODUCTION

1.        Since the 1990s, employees of Volkswagen, Daimler, Audi, Porsche, and BMW, using over sixty organized task forces, met over a thousand times to discuss and to agree upon various aspects of the cars they were selling in the United States, including specific technologies, costs, suppliers, component prices, and diesel emissions.  These employees met and agreed upon various strategies in order to reduce competition among them.  These five companies referred to themselves as the "Circle of Five" ("5er-Kreise"), and are so referred to collectively herein.

2.        Volkswagen and Daimler admitted the cartel's existence and actions in declarations submitted to German and European Union antitrust authorities.

3.        The Volkswagen, Daimler, Audi, Porsche, and BMW employees were divided into task forces and sub-task forces, broken down according to development areas, including power train, vehicle body, chassis, electronics, and complete vehicle.

4.        Examples of the task forces (AK is the abbreviation for Arbeitskreis, which means "task force") include:

- AK Luftfederung (air suspension);
- AK Zu Abgasnachbehandlungsthemen (exhaust after-treatment issues);
- AK Frendmotorenanalyse (competitor engine analysis);
- AK Kupplung (clutch);
- AK Dieselmotoren (diesel engines);
- gasoline engines;
- seat system;
- brake control systems; and
- mechanical components.

5.        As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more for Circle of Five Vehicles than they otherwise would have paid in the absence of Defendants' unlawful conduct.  The Defendants' conspiracy limited the pace and extent of innovation,

causing the Circle of Five Vehicles to have fewer features and lesser performance than they would absent the conspiracy. The cost savings associated with reduced innovation and features should have led to lower prices, but any savings were not passed on to the Class. The cartel deprived the Class of competitive innovation which would have spurred competition and lower prices.

6.       Plaintiffs bring this action individually and on behalf of a Class of all persons similarly situated in the United States who purchased or leased a new Circle of Five Vehicle ("Class Members"). A "Circle of Five Vehicle" is defined herein to include all cars sold in the United States by Volkswagen, Audi, Porsche, Daimler, or BMW since January 1, 1990.

## JURISDICTION AND VENUE

7.       Plaintiffs bring this action under section 16 of the Clayton Act, 15 U.S.C. § 26, for equitable and injunctive relief against the Circle of Five for violating section 1 of the Sherman Act, 15 U.S.C. § 1.

8.       In addition, jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and many members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.       Venue is proper in this Court pursuant to section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d), because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Moreover, Defendants conduct substantial business in this District, have marketed, advertised, sold, and leased the Circle of Five Vehicles in this District, and have caused harm to Class Members residing in this District.

10.       This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b)

- 2 -

participated in the sale and distribution of Circle of Five Vehicles throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

11.     Defendants engaged in conduct both inside and outside the United States that caused direct, substantial, and reasonably foreseeable and intended anti-competitive effects upon interstate commerce within the United States.

12.     The activities of the Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

13.     As described throughout this Complaint in more detail, Circle of Five Vehicles manufactured by Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any Circle of Five Vehicles are not purchased in the United States, and such Circle of Five Vehicles do not constitute import commerce, Defendants' unlawful activities during the Class period with respect thereto, as more fully alleged herein, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The anti-competitive conduct, and its effects on United States commerce described herein, proximately caused antitrust injury to the Plaintiffs and members of the Class in the United States.

14.     By reason of the unlawful activities alleged herein, Defendants substantially affected commerce throughout the United States, causing injury to the Plaintiffs and members of the Class.  Defendants, directly and through their agents, engaged in a conspiracy affecting all states to fix or inflate prices of Circle of Five Vehicles, which unreasonably restrained trade and adversely affected the market for Circle of Five Vehicles.

15.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Circle of Five Vehicles for personal use and not for resale, including Plaintiffsand members of the Class.

## PARTIES

*Plaintiffs*

16.     Plaintiff Renee Newton  is a resident of Palm Beach County, Florida.  In May, 2015, Ms. Newton leased a new BMW X5 in Florida.  Ms. Newton suffered injury as a result of Defendants' illegal conduct as alleged herein.

17.     Plaintiff Oren Arbit is a resident of Los Angeles County, California. In or about March, 2012 Mr. Arbit purchased a new dealer model Audi Q7 in California.   Mr. Arbit suffered injury as a result of Defendants' illegal conduct as alleged herein.

18.     Plaintiff Biltrite Furniture, Inc. ("Biltrite") is a Wisconsin corporation, with its place of business located in Milwaukee County, Wisconsin.  Biltrite leased a BMW X3 in April, 2017 and another in July, 2017 in Wisconsin.  Biltrite suffered injury as a result of Defendants' illegal conduct as alleged herein.

19.     Plaintiff Dennis Lane is a resident of Oakland County, Michigan.  In 2014 Mr. Lane purchased a new BMW 6 Series Gran Coupe in Michigan.  In or about January, 2015 Mr. Lane purchased a new Bentley in Michigan.  In 2015 Mr. Lane purchased a new Porsche in Michigan.  In 2017 Mr. Lane purchased a new Porsche in Florida.  Mr. Lane suffered injury as a result of Defendants' illegal conduct as alleged herein.

20.     Plaintiff Mark Rosen is a resident of Nassau County, New York.  In October, 2005 Mr. Rosen leased a new 2006 Mercedes Benz R500 in New York.  In February, 2008 Mr. Rosen leased a new Mercedes Benz R350 in New York.  In May, 2014 Mr. Rosen leased a new Mercedes Benz GL450 in New York. In April, 2015 Mr. Rosen leased a new Mercedes Benz S500 in New York. In May, 2017 Mr. Rosen leased a new Mercedes Benz S550 in New York. In December 2007 Mr. Rosen leased a new 2008 BMW 535 in New York.  In May, 2012 Mr.

Rosen leased a new BMW 750 in New York. In November, 2009 Mr. Rosen leased a new Porsche Panamera in New York.  Mr. Rosen suffered injury as a result of Defendants' illegal conduct as alleged herein.

21.     Plaintiff Tyler Carver is a resident of Palm Beach County, Florida.  In 2016 Mr. Carver purchased a new Mercedes Benz GLK350 in Florida. Mr. Carver suffered injury as a result of Defendants' illegal conduct as alleged herein.

22.     Plaintiff Miles Rosen is a resident of Palm Beach County, Florida.  In 2012 Miles Rosen purchased a new Volkswagen GLI Turbo in Florida.  Mr. Rosen suffered injury as a result of Defendants' illegal conduct as alleged herein.

23.     Plaintiff Frank Palumbo is a resident of Suffolk County, New York.  In 2008 Mr. Palumbo purchased a new Audi A8 L in New York.  In January, 2011 Mr. Palumbo purchased a new 2012 Audi A8 in New York.  In 2008, Mr. Palumbo purchased a new Mercedes Benz R350 in New York.  In January, 2016, Mr. Palumbo purchased a Mercedes Benz GLE350 in New York.  Mr. Palumbo suffered injury as a result of Defendants' illegal conduct as alleged herein.

*Defendants*

### 1.     Bayerische Motoren Werke AG

24.     Bayerische Motoren Werke Aktiengesellschaft  ("BMW AG") is a German corporation with its principal place of business located at Petuelring 130, 80788 München, Germany. BMW AG is the parent company of BMW of North America, LLC and dozens of other companies worldwide. BMW AG and its subsidiaries design, develop, manufacture, and sell vehicles for the global market under the BMW, Rolls Royce, and Mini brands. BMW AG earned €94 billion in global revenue in 2016, selling over 2.3 million vehicles.

25.     BMW AG engineered, designed, developed, and manufactured BMW Circle of Five Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.  BMW AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell BMW Circle of Five Vehicles.

1371411.1

### 2.      BMW of North America, LLC

26.      BMW of North America, LLC ("BMW America") is a Delaware limited liability corporation with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677. BMW America is a wholly-owned subsidiary of BMW AG that imports and distributes vehicles sold under the Mini and BMW brands in all 50 states. In 2016 BMW America sold over 350,000 vehicles in the U.S. alone.   BMW AG and BMW America are referred to herein as "BMW."

### 3.      Daimler AG

27.      Daimler Aktiengesellschaft ("Daimler AG") is a German corporation with its principal place of business located at Mercedesstr. 137, 70327 Stuttgart, Germany. Daimler AG is the parent corporation of Mercedes-Benz USA, LLC and numerous other companies globally. Daimler AG and its subsidiaries, design, develop, manufacturer, and sell luxury and commercial vehicles. Daimler AG and its holdings comprise one of the largest producers of premium cars and the biggest manufacturer of commercial vehicles in the world. In 2016 Daimler AG and its subsidiaries brought in revenue totaling €39.2 billion from their operations in the United States alone. Daimler AG markets vehicles under the Mercedes-Benz, Daimler Trucks, and Smart brands amongst others.

28.      Daimler AG engineered, designed, developed, and manufactured Daimler Circle of Five Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.   Daimler AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell Daimler Circle of Five Vehicles.

### 4.      Mercedes-Benz USA, LLC

29.      Mercedes-Benz USA, LLC ("MB USA") is a Delaware limited liability corporation with its principal place of business located at 1 Mercedes Drive, Montvale, NJ 07645. MB USA is a wholly-owned subsidiary of Daimler AG that markets and distributes Mercedes-Benz vehicles in all 50 states. Its vehicles primarily target the luxury and commercial

markets and range from sporty convertibles to semi-trailer trucks.  Daimler AG and MB USA are referred to herein as "Daimler."

### 5. Volkswagen AG

30.     Volkswagen Aktiengesellschaft  ("VW AG") is a German corporation with its principal place of business at Berliner Ring 2, 38440 Wolfsburg, Germany. VW AG is one of the largest automobile manufacturers in the world, and is in the business of designing, developing, manufacturing, and selling automobiles. VW AG is the parent corporation of Volkswagen Group of America, Inc., Audi AG, and Dr. Ing. h.c. F. Porsche AG . According to VW AG, it sold 10.14 million cars worldwide in 2014 – including 6.12 million VW-branded cars, 1.74 million Audi-Branded cars, and 189,849 Porsche-branded cars. Combined with other brands, VW AG boasts a 12.9% share of the worldwide passenger car market. VW AG's sales revenue in 2014 totaled €202 billion (approximately $221 billion) and sales revenue in 2013 totaled €197 billion (approximately $215 billion). At €12.7 billion (approximately $13.9 billion), VW AG generated its highest ever operating profit in fiscal year 2014, beating the previous record set in 2013 by €1.0 billion (approximately $1.1 billion).

31.     VW AG engineered, designed, developed, and manufactured Volkswagen Circle of Five Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.  VW AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell Volkswagen Circle of Five Vehicles.

### 6. Volkswagen Group of America, Inc.

32.     Volkswagen Group of America, Inc. ("VW America") is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. VW America is a wholly-owned subsidiary of Volkswagen AG, and it engages in business, including the advertising, marketing and sale of Volkswagen automobiles, in all 50 states. In 2014 alone, VW America sold 552,729 vehicles from its 1,018 dealer locations

1371411.1

in all 50 states, including 95,240 TDI® "clean" diesel vehicles.  VW AG and VW America are referred to herein as "Volkswagen."

7.    **Audi AG**

33.    Audi Aktiengesellschaft ("Audi AG") is a German corporation with its principal place of business at Auto-Union-Straße 1, 85045 Ingolstadt, Germany. Audi AG is the parent of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly-owned subsidiary of VW AG.  Audi AG designs, develops, manufacturers, and sells luxury automobiles. According to Audi AG, the Audi Group sold 1.74 million cars worldwide in 2014, with sales revenues in 2014 totaling €53.8 billion (approximately $58.5 billion). Audi AG's operating profit in fiscal year 2014 was €5.15 billion (approximately $5.63 billion).

34.    Audi AG engineered, designed, developed, and manufactured Audi Circle of Five Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.  Audi AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell Audi Circle of Five Vehicles.

8.    **Audi of America, LLC**

35.    Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engages in business, including the advertising, marketing and sale of Audi automobiles, in all 50 states.  Audi AG and Audi America are referred to herein as "Audi."

9.    **Dr. Ing. h.c. F. Porsche AG**

36.    Dr. Ing. h.c. F. Porsche Aktiengesellschaft  ("Porsche AG") is a German corporation with its principal place of business located at Porscheplatz 1, 70435 Stuttgart, Germany. Porsche AG designs, develops, manufacturers, and sells luxury automobiles. Porsche AG is a wholly-owned subsidiary of VW AG. According to Porsche AG, it sold 187,208 cars

worldwide in 2014, with sales revenues in 2014 totaling €17.2 billion (approximately $18.8 billion). Porsche AG's operating profit in fiscal year 2014 was €2.79 billion ($2.97 billion).

37.     Porsche AG engineered, designed, developed, and manufactured Porsche Circle of Five Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.   Porsche AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell Porsche Circle of Five Vehicles.

### 10.     Porsche Cars North America, Inc.

38.     Porsche Cars North America, Inc. ("Porsche America") is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354. Porsche America is a wholly-owned U.S. subsidiary of Porsche AG, and it engages in business, including the advertising, marketing and sale of Porsche automobiles, in all 50 states. According to Porsche AG, 2014 represented its best annual results in Porsche history in the U.S., with 47, 007 automobiles delivered. Porsche America now maintains a network of 189 dealers nationwide. Porsche AG and Porsche America are referred to herein as "Porsche."

39.     VW AG, VW America, Audi AG, Audi America, Porsche AG, Porsche America, Daimler AG, MB USA, BMW AG, and BMW America are referred to collectively herein as "Defendants," as are Volkswagen, Audi, Porsche, Daimler, and BMW.

## FACTUAL BACKGROUND

### I.     The Circle of Five Met and Conspired for Over 30 Years.

40.     On or about July 21, 2017, *Der Spiegel*, a German weekly news magazine,published an article entitled "The Car Syndicate."   The article summarized the Circle of Five's conspiracy to reduce or eliminate competition in the design, manufacture, and sale of Circle of Five Vehicles.

41.     For example, according to *Der Spiegel*, Daimler, BMW, Audi, Porsche, and Volkswagen have not competed to create and sell the best convertible top.   Instead, their experts

agreed on a collective, anti-competitive strategy during many meetings of the "AK Mechanical Components" ("AK" is the German abbreviation for Arbeitskreis, which means "taskforce"). Taskforce members cooperated to define the maximum speed (50 km/h) at which a convertible soft top can open or close.  "No arms race with regards to the speed," they wrote in the minutes of their meeting held in Bad Kissingen, Germany.

42.     The Circle of Five's employees were divided into taskforces and sub-taskforces, broken down according to the development areas "powertrain," "vehicle body," "chassis," "electronics," and "complete vehicle."

43.     There were over 60 taskforces, including those listed in paragraph 4, in which the car manufacturers worked together. "We are assuming," Volkswagen admitted to the European Commission, "that over 1000 meetings have taken place over the last five years."  The task forces discussed and coordinated a variety of competitive issues.

44.     The EU Commission is investigating the car cartel.  It confiscated documents from the companies and questioned witnesses.

45.     Daimler and Volkswagen (VW AG on behalf of Audi and Porsche as well) admitted the cartel to both the European Commission and the German Federal Cartel Office.

46.     Volkswagen submitted a declaration dated July 4, 2016 "regarding the participation in alleged antitrust violations."  According to that declaration, Daimler, BMW, Volkswagen, Audi, and Porsche agreed on their strategy "for many years, at least since the 1990s, to the present day" about vehicle development, costs, suppliers, and markets.

47.     Representatives of the German car manufacturers met for strategy discussions "on a regular basis several times a year."  They met in Stuttgart, Munich, Ingolstadt, or Wolfsburg, Germany, and during the big automobile trade fairs in Geneva, Frankfurt am Main, and Paris. "The suspicion [exists]," Volkswagen admitted in its declaration, (which also applies to Audi and Porsche) that "antitrust behavior" occurred.

48.     The Circle of Five secretly eliminated competition in many areas of vehicle development.

- 10 -

1371411.1

49.     The Circle of Five agreed on strategy in numerous meetings and telephone conferences.  There were agendas and protocols.  Confidentiality was also occasionally ridiculed.  An Audi email reads, "Hello all, enclosed please find [information on] the 'secret' meeting in Munich."

## II.     The Circle of Five Conspired to Coordinate Clean Diesel Engine Technology.

50.     The clean diesel engine scandal arose from concerns about greenhouse gas $CO_2$ and global warming.  The demand for reducing $CO_2$ emissions intensified throughout the world.  The automotive industry had come under criticism.

51.     Toyota already offered vehicles with a hybrid drive, where an electric motor supports a traditional combustion engine.  The technology was considered a milestone.  The EU Commission, under then-President José Manuel Barroso, argued that a binding quota for hybrid incentives should be imposed.

52.     The Circle of Five had nothing comparable to offer.  Rather than compete amongst themselves, they worked together to meet this new demand.  The Circle of Five had historically relied upon diesel technology, which is more than a hundred years old.  The compression ignition engine, which emits less $CO_2$ than a gasoline engine, was their answer to climate change.  But the diesel engine has a disadvantage.  It produces nitrogen oxides, which poison the air, especially in dense city areas.  Unites States authorities threatened to withhold approvals for large cars from Daimler or Audi.  Hence the motto, "Clean Diesel."  Nitrogen oxide emissions were supposed to be reduced with a technology that has long been used in trucks – the injection of urea, known as AdBlue.

53.     There was no competition between Daimler, BMW, Audi, Porsche, and Volkswagen about which company would most quickly and effectively implement this technology.  The developers did what they had done so often before: they discussed the subject in detail in their taskforces.  Their focus was harmonizing the different developments of the individual manufacturers.  A survey showed that each manufacturer had different AdBlue tank

- 11 -

sizes. This was unacceptable, according to the chassis technology taskforce, at a meeting in Sindelfingen, Germany on April 5, 2006. It was absolutely necessary to have a "coordinated approach" with regard to tank sizes.

54.     There was reason for the chassis technology managers to be concerned. The tank, a simple plastic part, fulfills a central function in cleaning nitrogen oxides. The larger it is, the more AdBlue can be injected, resulting in reduced nitrogen oxide emissions. A large tank also needs to be refilled less frequently.

55.     However, the large tank also had drawbacks. It was more expensive than a small one, and it needed more space. The sales experts wanted to use the space for high-quality stereo speakers, which can be sold to customers as expensive extras.

56.     Rather than compete to install the best solution, the Circle of Five agreed to coordinate. If the AdBlue injection were to become the technology of the future, then millions of plastic tanks, including the pump and the bracket, would soon be installed in vehicles. If they agreed on a tank size, the companies could "save up to 80 euros per vehicle," the taskforce recorded in a presentation. The size of the tanks and the associated diesel strategy manufacturers became a permanent issue in the taskforces.

57.     A fundamental decision was made in April 2006 when the development managers agreed to limit the size of the AdBlue tanks. For Europe, according to a VW email, AdBlue tanks with a "target size of 17 to 23 liters" should be developed. If possible, only two manufacturers should produce the tanks and customers were not supposed to refill them. However, the car manufacturers did not feel particularly bound to this initial requirement. In October of the following year, the managers of the companies met again to discuss the issue. Audi had prepared an overview of all tank sizes available in the cartel.

58.     According to Audi's overview, tanks with volumes "between 17 and 35 liters" were installed in 2007 by Daimler, Audi, Porsche, Volkswagen, and BMW. That would result in "ranges between 16,000 and 30,000 kilometers." The managers were upset there was not an agreement selecting the tank's manufacturers. Thus, there was an "urgent need for reconciliation

between the companies.  It is necessary to agree on a uniform escalation procedure," according to the meeting minutes.  To ensure that nothing went wrong, the responsible persons for the further steps were named: "Responsible are first the powertrain managers and second the chassis technology managers."

59.     The responsible managers exerted pressure.  After several meetings, telephone calls, and emails, Daimler, Audi, BMW, Porsche, and Volkswagen agreed in September 2008 on the introduction of an eight-liter tank for all vehicles.  The smaller tank was light-weight, low price, and allowed enough space for golf bags in the trunk.

60.     But at eight liters of AdBlue, a car cannot travel 6,000 kilometers if emissions are to be clean.  Volkswagen informed the EU Commission in its declaration that its Board of Directors became involved at this point: "An internal Audi presentation resulted in a commitment by the German car manufacturers at the executive level."

61.     With the decision to introduce the small tank, initial doubts grew, especially in the departments responsible for vehicle certification.  At this stage, the U.S. regulatory authorities became involved.  They demanded that the tanks contain enough urea that they would only need to be refilled during an inspection after approximately 16,000 kilometers.  They refused to accept a refill between the inspection dates.  They even threatened not to certify the vehicles.

62.     Disputes arose between the different departments in the respective Circle of Five companies.  The issue was discussed intensely in the secret taskforce meetings.  In order to comply with the U.S. requirements, a "minimum tank volume of 19 liters" was needed for an "average AdBlue consumption," according to an Audi document.  Daimler, Volkswagen, and BMW agreed.

63.     But their marketing departments considered such tanks too heavy and too large. "This target conflict," the Audi managers wrote, would have to be solved "universally."  A "concerted scenario for the future" was necessary.

64.     This was achieved in June 2010.  The marketing and sales departments prevailed. The companies agreed on small tanks.  For Europe, the size remained at the previously agreed-to

- 13 -

target size of eight liters, with 16-liter tanks planned for U.S. market.  Audi was allowed to install slightly bigger tanks in some models.

65.     With the introduction of stricter environmental requirements in the U.S. and in Europe, however, the amount of AdBlue required to comply with the standards increased.  The implementation of the EU6 standard alone would result in an "50 percent increase in AdBlue," according to a March 2011 report by the responsible strategy committee.  Thus, the AdBlue tanks were too small.

66.     The obvious idea of installing larger tanks and competing by selling the cleanest cars possible was not considered.  On the contrary, in an email from May 2014, Audi warned the need to add more AdBlue to the exhaust system could lead to an "arms race with regards to the tank size which should continue to be avoided as much as possible."

67.     If one manufacturer had installed a larger AdBlue tank, the licensing and supervisory authorities would probably have become suspicions of the others.  The obvious question would have been why the vehicles of this one company would need that much more urea to clean the emissions, while the cars of all companies supposedly got by with significantly less.  The companies did not want to take that risk.  Some of them had already started to deceive the regulatory authorities and the customers about the actual emissions.  Volkswagen used software that recognized when a vehicle was on the dynamometer and injected sufficient AdBlue for this short time only.  Audi used similar software.

68.     The U.S. authorities revealed this fraud in September 2015.  VW AG set aside more than 20 billion euros for penalties, updates to the vehicles, and compensation for U.S. customers.  The prosecutors' office in Stuttgart is investigating Daimler, which is suspected of having used similar software.  In July 2017, Daimler announced it would recall three million diesel vehicles for a software update.

III.   **The Circle of Five Conspired Instead of Competing, and Covered It Up.**

69.   As Volkswagen reports in its declaration, there was "an exchange of proprietary, competitively sensitive technical data."   The five car manufacturers defined "technical standards" together and agreed to use "only certain technical solutions" in new vehicles.   No one of the five should be so far ahead of the others with a new model that the others would encounter problems selling their cars.   A manufacturer could only introduce breakthrough technology if the others were able to offer the same technology relatively quickly.   Rather than compete by selling innovative technology, they agreed to cooperate and to forgo competing.

70.   The Circle of Five made these comparisons easier.   The "competitor engine analysis taskforce" ("AK Fremdmotorenanalyse") was responsible for coordinating the exchange of "driving resistance coefficient" data.   One employee said, "The 'give-and-take' motto is appropriate, and it is practiced in an amicable way in the taskforce."   The Circle of Five excluded participation by other manufacturers.   Requests to join the group from Jaguar, Volvo, Renault, or Fiat were rejected.

71.   An AK Fremdmotorenanalyse member warned that a rejected manufacturer could complain to the competition authorities.   Daimler had "this legal issue reviewed by lawyers as a precaution," a Volkswagen manager wrote in an email.   "The law firm hired for the review has expressed considerable concerns that there may be problems if a competitor actually filed a respective complaint."

72.   The idea that their agreements might be illegal repeatedly crossed the minds of the managers involved.   For a presentation in September 2011, the "diesel engines taskforce" ("AK Dieselmotoren") removed the last two pages dealing with the development of a special sensor. The reason behind this change was feedback from Daimler.   An email states, "A consultation with the legal department about the presentation confirmed the strong antitrust concerns."

73.   According to a note, the issue was also discussed when the working group met in Bayreuth, Germany on September 14, 2011.   The BMW representative asked, "Who is interested

in proving cartel infringement?"  The Daimler representative responded, "Mainly the Securities and Exchange Commission."  In addition, Daimler worried that "group-independent auditors have access to everything."  Another participant said, "it is not worrisome that we agreed a sensor must be developed, but rather that we have the same definition of the supplier."

74.     This was criticized, but things went well for a long time, and so the German automotive industry continued to conspire "amicably with each other."

75.     The conspiracy was not always conflict-free.  A note says, "The Daimler representation in the taskforce 'exhaust after-treatment issues' task force ("AK zu Abgasnachbehandlungsthemen") continues to be weak."

76.     The conspiracy extended to exchanging information on major suppliers.  On September 24, 2013, representatives of the task force on "air suspension" ("AK Luftfederung") met to "exchange (views on) supplier performance."   The discussion concerned ZF Friedrichshafen AG, one of the biggest suppliers.  Daimler criticized the company for its poor handling of electronically transmitted orders and claimed that the company only addressed problems when under pressure. The Porsche representative added, "The quality of the offer is also bad."

77.     Volkswagen's declaration reveals that the Circle of Five concealed their conspiracy.  There was lively "give-and-take" in the task force meetings, but on the auto-show stage, they pretended to compete fiercely.

78.     At the big trade fairs in Paris, Frankfurt, Geneva, Detroit, and Tokyo, the CEOs scoff at their competitors' models, even if they are quoted anonymously.  A Volkswagen executive, for example, said about a Daimler model, "[i]t has the width of a truck." A BMW developer commented on a new Audi, "It already looks as old as its predecessor."  A Mercedes manager said about a Volkswagen, "Better buy a Škoda, which is 3,000 euros cheaper and better."

## IV.   VW AG and Daimler AG Raced to European and German Antitrust Authorities Once Their Cartel Was Exposed.

79.   On June 23, 2016, the German Federal Cartel Office, the Bundeskartellamt, searched six companies in connection with investigations into a steel cartel.  The agency seized computers, hard disks, and files.  The seized materials included what the investigators called an "incidental catch" -- evidence of the Circle of Five cartel.

80.   Volkswagen searched for its car collusion cartel documents and gave them to the competition authorities in Brussels and Bonn.  The company wanted to take advantage of the Bundeskartellamt's amnesty program by being the first to reveal the cartel.

81.   Volkswagen is now hoping for government antitrust immunity.  On behalf of its subsidiaries Porsche and Audi, VW is asking for "immunity from fines, or, alternatively, a reduction in the fine to be imposed otherwise."

82.   Daimler admitted its role to the antitrust authorities, and is also seeking amnesty.

### INJURY

83.   German car manufacturers have long sought to differentiate themselves—as a group—based on the purported high quality of "German engineering."

84.   The Circle of Five's "combination of engineering, performance, and luxury is a powerful marketing position on the world automobile market."[1]  As a result, BMW, Mercedes and Audi have for years been the top three brands in the premium auto segment.[2]  Although Volkswagen is not a premium brand, it also trades on "German engineering."[3]  As Tim Mahoney, Chief Marketing Officer of VW America, put it in a 2011 interview with Automotive News:

> A: As chief marketing officer, I believe in consistency in how we present the brand.  We are using an idea that will become the North Star for a lot of the work we are doing:  "That's the power of

[1] Henley & Cotter, "The German Automobile Paradox," Advances in Business Research 2012, Vol. 3, No. 1, 90-98.

[2] *Id.*

[3] *Id.*

> German engineering."  That allows us to tell a lot of great stories that are true to the brand and to tell them consistently in a timeless manner.  We can tell an environmental story, a performance story, and a Chattanooga [site of VW's assembly plant] story -- that we have made a commitment to this marketplace in the middle of a recession.  We can tell an emotional story because it's not all about cold sheet metal or sales.  It's about the human feeling that people have for that brand and because of that -- that's the power of German engineering.

Asked about the importance of price competition to VW, Mahoney responded:

> It is not all about pricing but it is about value.  When you look at the power of German engineering, what does that rest on?  There are three major buckets:  quality and value, style and performance, commitment and responsibility.

85.     But for their collusion, each of the Circle of Five would have competed with one another to offer the safest, most powerful, and overall highest quality cars, for the greatest overall value.  This would have involved rapidly deploying new technologies.  It would have also involved introducing unpredictable and potentially destabilizing product innovations.  Each member of the Circle of Five would have kept its highly valuable, and competitively sensitive, research innovations and product roadmap information to itself, as each sought to out-innovate the others.  The reward?  Increased market share at the expense of the other German car companies, and higher quality vehicles for consumers at lower prices.

86.     But this is not what the Circle of Five chose to do.  Instead, the Circle of Five eliminated competition among each other, producing cars that met the same specifications and used the same components in key functional areas.  They shared a wide variety of what would otherwise have been confidential trade secrets.  They intentionally reduced competition and product differentiation.  They delayed or eliminated technology improvements in order to maximize profits for each technology life cycle.  This allowed the Circle of Five to hold component costs down and keep margins up—the opposite of the result that would have obtained under robust competition.  Consumers paid the price, receiving less car for their money than they otherwise would have.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

87.     Defendants concealed their fraud from the Class.  Defendants met, conspired, and agreed to coordinate, *inter alia*, their technological improvements, and supplier issues, and concealed from or failed to notify Plaintiffs, Class Members, and the public of their illegal agreements.

88.     Volkswagen and Daimler did not disclose the cartel until July 2017.

89.     Any applicable statute of limitation has therefore been tolled by Defendants' knowledge and active concealment of the facts alleged herein.

### Discovery Rule

90.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered the conspiracy among the Circle of Five to eliminate competition.

91.     Plaintiffs and Class Members had no realistic ability to discover the conspiracy until it was revealed in July 2017.

### CLASS ACTION ALLEGATIONS

92.     Plaintiffs bring this action on behalf of themselves and as a nationwide class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking injunctive and declaratory relief, as well as costs of suit and attorneys' fees, for violations of the Sherman Act, 15 U.S.C. § 1 and § 2, on behalf of the following class (the "Nationwide Injunctive Relief Class"):

> All persons and entities who are  residents of the United States and purchased or leased a new Circle of Five Vehicle for their own use and not for resale during the period from January 1, 1990 through the time the anticompetitive effects of the Defendants' conduct ends.

93.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages, costs of suit and attorneys' fees, and treble damages, on behalf of themselves and Class Members residing in

states that provide a damages remedy for indirect purchasers (the "Indirect Purchaser Jurisdictions"[4]) (the "Damages Class"):

> All persons and entities who are residents of the Indirect Purchaser Jurisdictions and purchased or leased a new Circle of Five Vehicle for their own use and not for resale during the period from January 1, 1990 through the time the anticompetitive effects of the Defendants' conduct ends.

94.     The Nationwide Injunctive Relief Class and the Damages Class are collectively referred to herein as the "Classes" unless otherwise indicated. Excluded from the Classes are Defendants, their parent companies, subsidiaries, affiliates, and officers, co-conspirators, federal and state government entities and instrumentalities, all judges assigned to this matter, and all jurors and their immediate families in this matter.  Claims for wrongful death and personal injury are excluded.  Also excluded solely against VW AG and VW America are the claims released by Volkswagen 2 liter and 3 liter owners against VW AG and VW America in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2672.

95.     While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are tens of millions of persons and entities.

96.     Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was applicable to all of the members of the Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a.      Whether Defendants engaged in a combination and conspiracy among themselves to restrain competition among Circle of Five Vehicles sold in the United States;

b.      the identity of the participants of the alleged conspiracy;

---

[4] The "Indirect Purchaser Jurisdictions" are jurisdictions that provide for a damages remedy for indirect purchasers under state antitrust or consumer protection laws:  Alabama, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

c.      the duration of the alleged conspiracy and the acts carried out by Defendants in furtherance of the conspiracy;

d.      whether Defendants conspired to limit technological advances;

e.      whether Defendants conspired to limit the number of part suppliers;

f.      whether Defendants conspired to agree upon part prices;

g.      whether Defendants made material misrepresentations regarding the Circle of Five Vehicles;

h.      whether Defendants had a duty to disclose the true nature of the Circle of Five Vehicles to Plaintiffs and Class Members;

i.      whether Defendants agreed to and failed to disclose material facts about the Circle of Five Vehicles;

j.      whether Plaintiffs and Class Members are entitled to a declaratory judgment;

k.      whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction.

l.      whether the alleged conspiracy violated the Sherman Act;

m.      whether the alleged conspiracy violated various state antitrust and restraint of trade laws;

n.      whether the alleged conspiracy violated various state consumer protection and unfair competition laws;

o.      the effect of the alleged conspiracy on the prices and/or quality of Circle of Five Vehicles sold in the United States during the Class Period;

p.      whether the conduct of Defendants, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

q.      the appropriate injunctive and related equitable relief for the Injunctive Class; and

r.      the appropriate class-wide measure of damages for the Nationwide Damages Class.

97.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust, consumer protection, and class action litigation.

98.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

99.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

100.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

101.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

102.    Although the exact number of Class Members is uncertain, Defendants sold millions of vehicles in the United States since 1990, so that joinder is impracticable.  The

disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are identifiable from information and records in Defendants' possession, custody, or control, and/or from state vehicle registration records.

103. The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, purchased or leased a Circle of Five Vehicle designed, manufactured, and distributed by Defendants. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they paid more for inferior Circle of Five Vehicles than they would have, absent the conspiracy. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

104. Plaintiffs are members of the Classes and will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting antitrust and consumer class actions, including actions involving cartels and automobiles.

105. Plaintiffs and their counsel are committed to prosecuting vigorously this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

106. Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

107. Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the Classes, and inconsistent adjudications with respect to Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and protection of all Class Members.

- 23 -

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## VIOLATIONS OF THE SHERMAN ACT,
## 15 U.S.C. § 1

108.    Plaintiffs incorporate and reallege, as though fully set forth herein, each of the paragraphs set forth above.

109.    Defendants and their coconspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of section one of the Sherman Act, 15 U.S.C. § 1.

110.    Beginning as early as January 1, 1990 and continuing through July 21, 2017, the exact starting date being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of section one of the Sherman Act, 15 U.S.C. § 1, by artificially reducing or eliminating competition in the United States.

111.    In particular, Defendants combined and conspired to suppress innovation, coordinate product features, reduce quality-adjusted output, and thereby inflate the prices of Circle of Five Vehicles.

112.    As a result of Defendants' unlawful conduct, prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized in the United States.

113.    The contract, combination, or conspiracy among Defendants consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

114.    As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more for Circle of Five Vehicles than they otherwise would have paid in the absence of Defendants' unlawful conduct.  The Defendants' conspiracy limited the pace and extent of innovation, causing the Circle of Five Vehicles to have fewer features and lesser performance than they

1371411.1

would absent the conspiracy.  The cost savings associated with reduced innovation and features should have led to lower prices, but any savings were not passed on to the Class.  The cartel deprived the Class of competitive innovation which would have spurred competition and lower prices.

115.    The alleged contract, combination or conspiracy is a per se violation of the federal antitrust laws.

116.    These violations are continuing and will continue unless enjoined by this Court.

117.    Pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF STATE ANTITRUST LAWS

118.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

119.    **Alabama**: By reason of the foregoing, Defendants have violated Alabama Code § 6-5-60(a), *et seq*. as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Alabama; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Alabama; (3) Class Members, including those who resided in Alabama and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Alabama; and (4) Class Members, including those who resided in Alabama, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Alabama;

b.    During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Alabama Code § 6-5-60(a), *et seq*. Accordingly, Class Members seek all forms of relief available under Alabama Code § 6-5-60(a), *et seq*.

120.    **Arizona**: By reason of the foregoing, Defendants have violated Arizona Revised Statutes, §§ 44-1401, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Arizona; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Class Members, including those who resided in Arizona and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Arizona; and (4) Class Members, including those who resided in Arizona, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Arizona;

b.      During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq*. Accordingly, Class Members seek all forms of relief available under Arizona Revised Statutes §§ 44-1401, *et seq*.

121.    **California**: By reason of the foregoing, Defendants have violated California Business and Professions Code, §§ 16700, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout California; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and

stabilized at artificially high levels throughout California; (3) Class Members, including those who resided in California and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in California; and (4) Class Members, including those who resided in California, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in California;

      b.    During the Class Period, Defendants' illegal conduct substantially affected California commerce;

      c.    As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

      d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of California Business and Professions Code §§ 16720, *et seq.* Accordingly, Class Members seek all forms of relief available under California Business and Professions Code §§ 16720, *et seq.*

122.  **District of Columbia**:  By reason of the foregoing, Defendants have violated District of Columbia Code, §§ 28-4501, *et seq.* as follows:

      a.    Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout the District of Columbia; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Class Members, including those who resided in the District of Columbia and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Class Members, including those who resided in the District of Columbia, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in the District of Columbia;

      b.    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce;

1371411.1

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of District of Columbia Code, §§ 28-4501, *et seq.*  Accordingly, Class Members seek all forms of relief available under District of Columbia Code, §§ 28-4501, *et seq.*

123.    **Hawaii**:  By reason of the foregoing, Defendants have violated Hawaii Revised Statutes, §§ 480-1, *et seq.* as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Class Members, including those who resided in Hawaii and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Hawaii; and (4) Class Members, including those who resided in Hawaii, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Hawaii;

b.      During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Hawaii Revised Statutes, §§ 480-1, *et seq.* Accordingly, Class Members seek all forms of relief available under Hawaii Revised Statutes, §§ 480-1, *et seq.*

124.    **Illinois**: By reason of the foregoing, Defendants have violated the Illinois Antitrust Act, Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.* as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated

1371411.1

throughout Illinois; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Class Members, including those who resided in Illinois and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Illinois; and (4) Class Members, including those who resided in Illinois, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Illinois;

b.      During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.* Accordingly, Class Members seek all forms of relief available under Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*

125.    **Iowa**:   By reason of the foregoing, Defendants have violated Iowa Code, §§ 553.1, *et seq.* as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Iowa; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Class Members, including those who resided in Iowa and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Iowa; and (4) Class Members, including those who resided in Iowa, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Iowa;

b.      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Iowa Code, §§ 553.1, *et seq*. Accordingly, Class Members seek all forms of relief available under Iowa Code, §§ 553.1, *et seq*.

126.   **Kansas**: By reason of the foregoing, Defendants have violated Kansas Statutes, §§ 50-101, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Kansas; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Class Members, including those who resided in Kansas and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Kansas; and (4) Class Members, including those who resided in Kansas, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Kansas;

b.      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Kansas Statutes §§ 50-101, *et seq*. Accordingly, Class Members seek all forms of relief available under Kansas Statutes §§ 50-101, *et seq*.

127.   **Maine**: By reason of the foregoing, Defendants have violated the Maine Revised Statutes, 10 M.R.S. §§ 1101, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Maine; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and

- 30 -

stabilized at artificially high levels throughout Maine; (3) Class Members, including those who resided in Maine and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Maine; and (4) Class Members, including those who resided in Maine, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Maine;

b.     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Maine Revised Statutes 10, §§ 1101, *et seq*. Accordingly, Class Members seek all forms of relief available under Maine Revised Statutes 10, §§ 1101, *et seq*.

128.     **Michigan**: By reason of the foregoing, Defendants have violated Michigan Compiled Laws §§ 445.773, *et seq*. as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Michigan; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Class Members, including those who resided in Michigan and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Michigan; and (4) Class Members, including those who resided in Michigan, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Michigan;

b.     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

1371411.1

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Michigan Compiled Laws §§ 445.773, *et seq*. Accordingly, Class Members seek all forms of relief available under Michigan Compiled Laws §§ 445.773, *et seq*.

129.    **Minnesota**: By reason of the foregoing, Defendants have violated Minnesota Statutes §§ 325D.49, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Minnesota; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Class Members, including those who resided in Minnesota and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Minnesota; and (4) Class Members, including those who resided in Minnesota, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Minnesota;

b.      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Minnesota Statutes §§ 325D.49, *et seq*. Accordingly, Class Members seek all forms of relief available under Minnesota Statutes §§ 325D.49, *et seq*.

130.    **Mississippi**: By reason of the foregoing, Defendants have violated Mississippi Code §§ 75-21-1, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Mississippi; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Class Members, including those who resided in Mississippi and/or purchased Circle of Five Vehicles that were shipped by

- 32 -

Defendants or their co-conspirators, were deprived of free and open competition, including in Mississippi; and (4) Class Members, including those who resided in Mississippi, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Mississippi;

b.      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Mississippi Code §§ 75-21-1, *et seq*. Accordingly, Class Members seek all forms of relief available under Mississippi Code §§ 75-21-1, *et seq*.

131.    **Nebraska**: By reason of the foregoing, Defendants have violated Nebraska Revised Statutes §§ 59-801, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Nebraska; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Class Members, including those who resided in Nebraska and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Nebraska; and (4) Class Members, including those who resided in Nebraska, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Nebraska;

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Class Members seek all forms of relief available under Nebraska Revised Statutes §§ 59-801, *et seq*.

132.     **Nevada**: By reason of the foregoing, Defendants have violated Nevada Revised Statutes §§ 598A.010, *et seq.* as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Nevada; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Class Members, including those who resided in Nevada and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Nevada; and (4) Class Members, including those who resided in Nevada, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Nevada;

b.     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Nevada Revised Statutes §§ 598A.010, *et seq*. Accordingly, Class Members seek all forms of relief available under Nevada Revised Statutes §§ 598A.010, *et seq*.

133.     **New Hampshire**:  By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes, §§ 356:1, *et seq.* as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout New Hampshire; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Class Members, including those who resided in New Hampshire and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in New Hampshire; and (4) Class Members, including those who

- 34 -

resided in New Hampshire, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in New Hampshire;

b.        During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce;

c.        As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.        By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes, §§ 356:1, *et seq*. Accordingly, Class Members seek all forms of relief available under New Hampshire Revised Statutes, §§ 356:1, *et seq*.

134.    **New Mexico**:  By reason of the foregoing, Defendants have violated New Mexico Statutes, §§ 57-1-1, *et seq*. as follows:

a.        Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Class Members, including those who resided in New Mexico and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in New Mexico; and (4) Class Members, including those who resided in New Mexico, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in New Mexico.

b.        During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce;

c.        As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.        By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New Mexico Statutes, §§ 57-1-1, *et seq*. Accordingly, Class Members seek all forms of relief available under New Mexico Statutes, §§ 57-1-1, *et seq*.

135. **New York**: By reason of the foregoing, Defendants have violated New York General Business Laws §§ 340, *et seq.* as follows:

a. Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout New York; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Class Members, including those who resided in New York and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in New York; and (4) Class Members, including those who resided in New York, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in New York.

b. During the Class Period, Defendants' illegal conduct substantially affected New York commerce;

c. As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New York General Business Laws §§ 340, *et seq.* Accordingly, Class Members seek all forms of relief available under New York General Business Laws §§ 340, *et seq.*

136. **North Carolina**: By reason of the foregoing, Defendants have violated North Carolina General Statutes, §§ 75-1, *et seq.* as follows:

a. Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout North Carolina; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Class Members, including those who resided in North Carolina and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in North Carolina; and (4) Class Members, including those who resided in North Carolina, paid

supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in North Carolina;

b.      During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of North Carolina General Statutes, §§ 75-1, *et seq.* Accordingly, Class Members seek all forms of relief available under North Carolina General Statutes, §§ 75-1, *et seq.*

137.    **North Dakota**:  By reason of the foregoing, Defendants have violated North Dakota Century Code, §§ 51-08.1-01, *et seq.* as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout North Dakota; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Class Members, including those who resided in North Dakota and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in North Dakota; and (4) Class Members, including those who resided in North Dakota, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in North Dakota;

b.      During the Class Period, Defendants' illegal conduct substantially affected North Dakota commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of North Dakota Century Code, §§ 51-08.1-01, *et seq.* Accordingly,

Class Members seek all forms of relief available under North Dakota Century Code, §§ 51-08.1-01, *et seq.*

138.   **Oregon**: By reason of the foregoing, Defendants have violated Oregon Revised Statutes §§ 646.705, *et seq.* as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Oregon; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Class Members, including those who resided in Oregon and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Oregon; and (4) Class Members, including those who resided in Oregon, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Oregon;

b.     During the Class Period, Defendants' illegal conduct substantially affected Oregon commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Class Members seek all forms of relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

139.   **South Dakota**:  By reason of the foregoing, Defendants have violated South Dakota Codified Laws, §§ 37-1-3.1, *et seq.* as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout South Dakota; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Class Members, including those who resided in South Dakota and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in

- 38 -

South Dakota; and (4) Class Members, including those who resided in South Dakota, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in South Dakota;

b.      During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of South Dakota Codified Laws, §§ 37-1-3.1, *et seq*. Accordingly, Class Members seek all forms of relief available under South Dakota Codified Laws, §§ 37-1-3.1, *et seq*.

140.    **Tennessee**: By reason of the foregoing, Defendants have violated Tennessee Code §§ 47-25-101, *et seq*. as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Class Members, including those who resided in Tennessee and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Tennessee; and (4) Class Members, including those who resided in Tennessee, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Tennessee;

b.      During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Tennessee Code §§ 47-25-101, *et seq*. Accordingly, Class Members seek all forms of relief available under Tennessee Code §§ 47-25-101, *et seq*.

141.  **Utah**:  By reason of the foregoing, Defendants have violated Utah Code, §§ 76-10-3101, *et seq*. as follows:

a.  Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Utah; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Class Members, including those who resided in Utah and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Utah; and (4) Class Members, including those who resided in Utah, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Utah;

b.  During the Class Period, Defendants' illegal conduct substantially affected Utah commerce;

c.  As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.  By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Utah Code, §§ 76-10-3101, *et seq*. Accordingly, Class Members seek all forms of relief available under Utah Code, §§ 76-10-3101, *et seq*.

142.  **Vermont**:  By reason of the foregoing, Defendants have violated Vermont Statutes, 9 V.S. §§ 2453, *et seq*. as follows:

a.  Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Vermont; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Class Members, including those who resided in Vermont and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Vermont; and (4) Class Members, including those who resided in Vermont, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Vermont;

b.       During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce;

c.       As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.       By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Vermont Statutes, 9 V.S. §§ 2453, *et seq.* Accordingly, Class Members seek all forms of relief available under Vermont Statutes, 9 V.S. §§ 2453, *et seq.*

143.   **West Virginia**: By reason of the foregoing, Defendants have violated West Virginia Code §§ 47-18-1, *et seq.* as follows:

a.       Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout West Virginia; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Class Members, including those who resided in West Virginia and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in West Virginia; and (4) Class Members, including those who resided in West Virginia, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in West Virginia;

b.       During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce;

c.       As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.       By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Class Members seek all forms of relief available under West Virginia Code §§ 47-18-1, *et seq.*

144.   **Wisconsin**: By reason of the foregoing, Defendants have violated Wisconsin Statutes §§ 133.01, *et seq.* as follows:

1371411.1

a.      Defendants' combination or conspiracy had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Wisconsin; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Class Members, including those who resided in Wisconsin and/or purchased Circle of Five Vehicles that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Wisconsin; and (4) Class Members, including those who resided in Wisconsin, paid supra-competitive, artificially inflated prices for Circle of Five Vehicles, including in Wisconsin;

b.      During the Class Period, Defendants' illegal conduct substantially affected Wisconsin commerce;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured in their business and property and are threatened with further injury;

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Wisconsin Statutes §§ 133.01, *et seq*. Accordingly, Class Members seek all forms of relief available under Wisconsin Statutes §§ 133.01, *et seq*.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF STATE CONSUMER PROTECTION
### AND UNFAIR COMPETITION LAWS

145.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

146.    Plaintiffs allege the following violations of state consumer protection and unfair competition laws in the alternative.

147.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

148.    **Arkansas**:    By reason of the foregoing, Defendants violated the Arkansas Deceptive Trade Practices Act, Arkansas Code, §§ 4-88-101, *et. seq*. as follows:

      a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Circle of Five Vehicles were sold, distributed, or obtained in Arkansas, and took efforts to conceal their agreements from Class Members.   This conduct on the part of the Defendants constituted "deceptive" and "unconscionable" acts or practices in violation of Arkansas Code, § 4-88-107(a)(10);

      b.      Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Arkansas; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

      c.      During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers;

      d.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

149.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code, §§ 4-88-101, *et. seq.*, and, accordingly, Class Members seek all relief available under that statute.

150.    **California**: By reason of the foregoing, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. as follows:

      a.      Defendants committed acts of unfair competition, as defined by section 17200, *et seq*., by engaging in a conspiracy to fix and stabilize the price of Circle of Five Vehicles as described above;

      b.      The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as described above, constitute a common and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices with the

meaning of section 17200, *et seq*., including, but not limited to (1) violation of section 1 of the Sherman Act; (2) violation of the Cartwright Act;

        c.       Defendants' acts, omissions, misrepresentations, practices, and nondisclosures are unfair, unconscionable, unlawful, and/or fraudulent independently of whether they constitute a violation of the Sherman Act or the Cartwright Act;

        d.       Defendants' acts or practices are fraudulent or deceptive within the meaning of section 17200, *et seq*.;

        e.       Defendants' conduct was carried out, effectuated, and perfected within the State of California. Defendants maintained offices in California where their employees engaged in communications, meetings and other activities in furtherance of Defendants' conspiracy;

        f.       By reason of the foregoing, Class Members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as result of such business acts and practices described above.

151.   **Florida**: By reason of the foregoing, Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. as follows:

        a.       Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Florida; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially inflated prices for Circle of Five Vehicles;

        b.       During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers;

        c.       As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. §§ 501.201, *et seq.*, and, accordingly, Class Members seek all relief available under that statute.

152.    **Hawaii**:  By reason of the foregoing, Defendants have violated Hawaii Revised Statutes, § 480-2. as follows:

a.      Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

b.      During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

153.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes, § 480-2, and, accordingly, Class Members seek all relief available under that statute.

154.    **Massachusetts**: By reason of the foregoing, Defendants have violated the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93A, § 1, *et seq.* as follows:

a.      Defendants were engaged in trade or commerce as defined by M.G.L. c. 93A, § 1;

b.      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and noncompetitive levels, the prices at which Circle of Five Vehicles were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from the Class Members;

c.      Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Massachusetts; (2) the prices of Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially inflated prices for Circle of Five Vehicles;

d.      As a direct and proximate result of Defendants' unlawful conduct, Class Members were injured and are threatened with further injury;

e.      Each of the Defendants or their representatives is being served with a demand letter in accordance with M.G.L. c. 93A, § 1, or such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth;

f.      By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of M.G.L. c. 93A, § 2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling the Class Members to multiple damages.

155.    **Missouri**: By reason of the foregoing, Defendants have violated Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020 as follows:

a.      Class Members purchased Circle of Five Vehicles and/or Circle of Five Vehicles for personal, family, or household purposes;

b.      Defendants engaged in the conduct described herein in connection with the sale of Circle of Five Vehicles in trade or commerce in a market that includes Missouri;

c.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Circle of Five Vehicles were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Class Members;

1371411.1

d.      Defendants concealed, suppressed, and omitted to disclose material facts to Class Members concerning Defendants' unlawful activities and artificially inflated prices for Circle of Five Vehicles. The concealed, suppressed, and omitted facts would have been important to Class Members as they related to the cost of Circle of Five Vehicles that they purchased;

e.      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Circle of Five Vehicles by making public statements that were not in accord with the facts;

f.      Defendants' statements and conduct concerning the price of Circle of Five Vehicles were deceptive as they had the tendency or capacity to mislead Class Members to believe that they were purchasing Circle of Five Vehicles at prices established by a free and fair market. Defendants' unlawful conduct had the following effects: (1) Circle of Five Vehicles price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Circle of Five Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supracompetitive, artificially inflated prices for Circle of Five Vehicles;

g.      The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act;

h.      As a direct and proximate result of the above-described unlawful practices, Class Members suffered ascertainable loss of money or property;

i.      Accordingly, Class Members seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60- 7.010, *et seq*., 15 CSR

60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

156.   **Montana**:   By reason of the foregoing, Defendants have violated the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Montana Code, §§ 30-14-101, *et seq.* and §§ 30-14-201, *et seq.* as follows:

a.   Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles® was restrained, suppressed, and eliminated throughout Montana; (2) prices for Circle of Five Vehicles® were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

b.   During the Class Period, Defendants marketed, sold, or distributed Circle of Five Vehicles in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers;

c.   As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

157.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code, §§ 30-14-101, *et seq.* and §§ 30-14-201, *et seq.*, and, accordingly, Class Members seek all relief available under that statute.

158.   **Nebraska**:   By reason of the foregoing, Defendants have violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.* as follows:

a.   Defendants' unlawful conduct had the following effects: (1) Circle of Five Vehicles price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Circle of Five Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially inflated prices for Circle of Five Vehicles;

1371411.1

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers;

c.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

d.      Defendants' actions and conspiracy have had a substantial impact on the public interests of Nebraska and its residents;

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq*. and, accordingly, Class Members seek all relief available under that statute.

159.   **New Mexico**:  By reason of the foregoing, Defendants have violated the New Mexico Unfair Practices Act, New Mexico Statutes, § 57-12-1, *et seq*. as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Circle of Five Vehicles was sold, distributed, or obtained in New Mexico.  Defendants took efforts to conceal their agreements from Class Members.  This conduct on the part of the Defendants constituted "unfair or deceptive trade practices and unconscionable trade practices" in violation of New Mexico Statutes, § 57-12-3;

b.      Defendants and their co-conspirators possessed the sole power to set prices of Circle of Five Vehicles, and used this power to conceal their price-fixing conspiracy from Class Members.  Defendants took advantage of Class Members lack of knowledge to a grossly unfair degree, within the meaning of New Mexico Statutes, § 57-12-2(E);

c.      Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

d.      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers;

e.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Statutes, § 57-12-1, *et seq.*, and, accordingly, Class Members seek all relief available under that statute.

160.   **New York**:  By reason of the foregoing, Defendants have violated New York's General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.* as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which Circle of Five Vehicles were sold, distributed or obtained in New York and took efforts to conceal their agreements from Class Members;

b.      The conduct of the Defendants described herein constitutes consumer oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner;

c.      Defendants made certain statements about Circle of Five Vehicles that they knew would be seen by New York residents and these statements either omitted material information that rendered the statements they made materially misleading or affirmatively misrepresented the real cause of price increases for Circle of Five Vehicles;

d.      Defendants' unlawful conduct had the following effects: (1) Circle of Five Vehicles price competition was restrained, suppressed, and eliminated throughout New York; (2) Circle of Five Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Class Members were deprived of free and open

competition; and (4) Class Members paid supra-competitive, artificially inflated prices for Circle of Five Vehicles;

e.       During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers;

f.       During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Circle of Five Vehicles in New York;

g.       Class Members seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, Class Members do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349(h).

161.   **North Carolina**:  By reason of the foregoing, Defendants have violated North Carolina General Statutes, §§ 75-1.1, *et seq*. as follows:

a.       Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Circle of Five Vehicles was sold, distributed, or obtained in North Carolina.  Defendants took efforts to conceal their agreements from Class Members.  Defendants and their co-conspirators possessed the sole power to set prices of Circle of Five Vehicles, and used this power to conceal their price-fixing conspiracy from Class Members.  Class Members were therefore unaware that they were being unfairly and illegally overcharged for Circle of Five Vehicles;

b.       Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout North Carolina; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

c.      During the Class Period, Defendants marketed, sold, or distributed Circle of Five Vehicles in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers;

d.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina General Statutes, §§ 75-1.1, *et seq.*, and, accordingly, Class Members seek all relief available under that statute.

162.    **Vermont**:  By reason of the foregoing, Defendants have violated the Vermont Consumer Protection Act, 9 Vermont Statutes, §§ 2453, *et seq.* as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Circle of Five Vehicles was sold, distributed, or obtained in Vermont.  Defendants took efforts to conceal their agreements from Class Members, including through affirmative misrepresentations and omissions of information important to Class Members;

b.      Defendants and their co-conspirators possessed the sole power to set prices of Circle of Five Vehicles, and used this power to conceal their price-fixing conspiracy from Class Members.  Class Members were therefore unaware that they were being unfairly and illegally overcharged for Circle of Five Vehicles;

c.      Defendants' unlawful conduct had the following effects: (1) competition for Circle of Five Vehicles was restrained, suppressed, and eliminated throughout Vermont; (2) prices for Circle of Five Vehicles were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Class Members were deprived of free and open competition; and (4) Class Members paid supra-competitive, artificially-inflated prices for Circle of Five Vehicles;

d.      During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce and consumers;

e.      As a direct and proximate result of Defendants' unlawful conduct, Class Members have been injured and are threatened with further injury;

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont Statutes, §§ 2453, *et seq.*, and, accordingly, Class Members seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

163.    Plaintiffs bring this claim on behalf of the Nationwide Injunctive Relief Class.

164.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

165.    Defendants have been unjustly enriched in that they sold the Circle of Five Vehicles that were not as technologically advanced as they may have been absent the conspiracy, allowing Defendants to reduce competition risks and costs and maintain higher profit margins.

166.    Plaintiffs and Class Members conferred a benefit on Defendants by purchasing and paying for the Circle of Five Vehicles.

167.    Defendants know of and appreciate the benefit conferred by Plaintiffs and Class Members and have retained that benefit notwithstanding their knowledge that the benefit is unjust.

168.    The foregoing did not occur by happenstance or conditions out of Defendants' control.  Defendants deliberately conspired and agreed with each other.

169.    Defendants should therefore be required to disgorge the unjust enrichment.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A.      An order certifying the proposed Nationwide Injunctive Relief Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class

1371411.1

Counsel;

B.      An order certifying the proposed Damages Class, designating Plaintiffs as the named representative of the Class, and designating the undersigned as Class Counsel;

C.      That the Court determine that this action may be maintained as a class action under Rules of Civil Procedure 23(a), (b)(2) and (b)(3), and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to members of the Class;

D.      That the Court adjudge and decree that the contract, combination, and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of section 1 of the Sherman Act;

E.      That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition;

F.      That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiffs and the Class;

G.      That the Court award Plaintiffs and the Class treble damages;

H.      That the Court award Plaintiffs and the Class attorneys' fees and costs as well as prejudgment and post judgment interest as permitted by law;

I.      That the Court award Plaintiffs and the Class such other and further relief as may be deemed necessary and appropriate;

J.      An award of pre-judgment and post-judgment interest, as provided by law; and

K.      Such other relief as may be appropriate under the circumstances.

1371411.1

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  September 19, 2017     By:      /s/ James E. Cecchi
     James E. Cecchi

James E. Cecchi
*JCecchi@carellabyrne.com*
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO P.C.
5 Becker Farm Road
Roseland, NJ  07068-1739
Telephone:  973-994-1700
Facsimile:  973-994-1744

Elizabeth J. Cabraser
*ecabraser@lchb.com*
Eric B. Fastiff
*efastiff@lchb.com*
Brendan P. Glackin
*bglackin@lchb.com*
Dean M. Harvey
*dharvey@lchb.com*
Wilson M. Dunlavey
*wdunlavey@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415-956-1000
Facsimile:  415-956-1008

1371411.1

David S. Stellings
*dstellings@lchb.com*
Abbye R. Klamann
*aklamann@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212-355-9500
Facsimile:  212-355-9592

Dan Drachler
*ddrachler@zsz.com*
ZWERLING, SCHACHTER & ZWERLING, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone:  206-223-2053
Facsimile:  206-343-9636

Jeffrey C. Zwerling
*jzwerling@zsz.com*
Robert S. Schachter
*rschachter@zsz.com*
Sona R. Shah
*sshah@zsz.com*
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue, 32nd Floor
New York, NY 10010
Telephone:  212-223-3900
Facsimile:  212-371-5969

*Attorneys for Plaintiffs Renee Newton, Oren Arbit, Biltrite Furniture, Inc., Dennis Lane, Mark Rosen, Tyler Carver, Miles Rosen, and Frank Palumbo, individually and behalf of all others similarly situated*